IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| ENRIQUE BERNAOLA, : | |
| Individually and On Behalf of the : | Case No. 2:16-cv-684 |
| CHECKSMART FINANCIAL 401(k) PLAN, : | |
| : | **COMPLAINT** |
| Plaintiff, : | |
| : | |
| v. : | |
| : | JURY TRIAL DEMANDED |
| CHECKSMART FINANCIAL LLC, : | |
| CHECKSMART FINANCIAL LLC : | |
| PLAN COMMITTEE, PAGLE HELTERBRAND, : | |
| and CETERA ADVISOR NETWORKS, LLC, : | |
| : | |
| Defendants. : | |

## I.     INTRODUCTION

1.     Plaintiff, Enrique Bernaola ("Plaintiff"), individually and on behalf of the Checksmart Financial 401(k) Plan (the "Checksmart Plan" or the "Plan"), brings this action under 29 U.S.C. § 1132 against Defendants, Checksmart Financial, LLC ("Checksmart"), Checksmart Financial LLC Plan Committee ("Plan Committee"), Pagle Helterbrand ("Helterbrand"), and Cetera Advisor Networks, LLC ("Cetera") (collectively, "Defendants"), for breach of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

2.     Defined contribution plans that are qualified as tax-deferred vehicles under Section 401 of the Internal Revenue Code, 26 U.S.C. §§ 401(a) and (k) (*i.e.,* 401(k) plans), have become the primary form of retirement savings in the United States and, as a result, America's *de facto* retirement system. Unlike traditional defined benefit retirement plans, in which the employer typically promises a calculable benefit and assumes the risk with respect to high fees

or under-performance of pension plan assets used to fund defined benefits, 401(k) plans operate in a manner in which participants bear the risk of high fees and investment under-performance.

3. Personal savings accounts in the form of 401(k) and other defined contribution plans have become the primary method for employees in the United States to save for retirement in recent years. The importance of defined contribution plans to the United States retirement system has become increasingly pronounced as employer-provided defined benefit ("DB") plans have become increasingly rare as an offered and meaningful employee benefit.

4. As fiduciaries to the Plan, Defendants are obligated to act for the exclusive benefit of participants, invest the assets of the Plan in a prudent fashion, and ensure that Plan expenses are fair and reasonable. At all pertinent times, as explained below, Defendants (a) were fiduciaries under ERISA and (b) breached their fiduciary duties under ERISA by (i) allowing unreasonable expenses to be charged to participants for administration of the Plan, and (ii) selecting and retaining high-cost and poor-performing investments instead of other available and more prudent alternative investments.

5. To remedy these fiduciary breaches and other violations of ERISA, Plaintiff, individually and as a representative of the Plan, brings this action on behalf of the Plan under Section 502, 29 U.S.C. §1132, and Section 409 of ERISA, 29 U.S.C. §1109, to enjoin Defendants from further breaches of their fiduciary duties. In addition, Plaintiff seeks such other equitable or remedial relief for the Plan as the Court may deem appropriate and just under all of the circumstances.

6. Plaintiff specifically brings this action under ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132, to recover the following relief:

>A declaratory judgment holding that the acts of Defendants described herein violate ERISA and applicable law;
>
>A permanent injunction against Defendants prohibiting the practices described herein and affirmatively requiring them to act in the best interests of the participants;
>
>Appropriate equitable, legal or remedial relief returning the excessive fees charged to the Plan as a result of the breaches of fiduciary duties at issue;
>
>Attorneys' fees, costs and other recoverable expenses of litigation; and
>
>Such other and additional legal, equitable or remedial relief that the Court deems appropriate and just under all of the circumstances.

## II.  THE PARTIES

7.  Plaintiff is a current participant under 29 U.S.C. §1002(7) of the Checksmart Plan, which is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(34).  Plaintiff is a resident of El Monte, Los Angeles County, California.  The Plan is established and maintained under a written document in accordance with 29 U.S.C. §1102, and serves as a vehicle for retirement savings and to produce retirement income for employees of Checksmart.  Retirement income generated by the Plan depends upon contributions made on behalf of each employee by Checksmart, deferrals of employee compensation and employer matching contributions, and from the performance of the Plan's investment options (net of fees and expenses).  Checksmart established a trust (the "Master Trust") to hold participant and employer contributions and such other earnings, income and appreciation from Plan investments, less payments made by the Plan's trustee, to carry out the purposes of the Trust, in accordance with 29 U.S.C. § 1103.  As of April 30, 2015, the Plan had more than $25 million in total assets and over 1,700 participants with account balances.

8. Defendant, Checksmart, is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Dublin, Ohio. Checksmart is the Plan sponsor, Plan Administrator, a designated fiduciary of the Plan and a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002, 1102.

9. Defendant, Plan Committee, is a named fiduciary under the Plan, administers the Plan, and is a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002, 1102. The Plan Committee maintains its address at Checksmart's headquarters in Dublin, Ohio. The Plan Committee and its member are appointed by Checksmart to administer the Plan on Checksmart's behalf.

10. Defendant, Helterbrand, is the only member of the Plan Committee and, by virtue of her membership, is a fiduciary of the Plan.

11. Defendant, Cetera, is a co-fiduciary of the Plan and provides investment advice to the administrator of the Plan. Cetera maintains its principal place of business in El Segundo, California, and conducts business throughout the United States, including in this judicial district. Cetera is a fiduciary of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

### III. JURISDICTION AND VENUE

12. Plaintiff seeks relief on behalf of the Checksmart Plan pursuant to ERISA's civil enforcement remedies with respect to fiduciaries and other interested parties and, specifically, under ERISA Section 409, 29 U.S.C. § 1109 and 29 U.S.C. § 1132.

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA Section 502(e), 29 U.S.C. § 1132(e).

14. Venue is proper in this judicial district pursuant to ERISA Section 502(e), 29

U.S.C. § 1132(e) and 28 U.S.C. § 1391, because Checksmart's principal place of business is in this district, and the Plan Committee and Helterbrand are located in this district.

## IV. FACTUAL ALLEGATIONS

### A. Background

15. The Checksmart Plan is a participant-directed plan in which participants direct their retirement assets into a pre-selected menu of investment offerings from over 50 mutual funds.

16. Mutual funds are publicly-traded investment vehicles consisting of a pool of funds collected from many investors for the purpose of investing in a portfolio of equities, bonds, and other securities. Mutual funds are operated by professional investment advisers, who, like the mutual funds, are registered with the Securities and Exchange Commission ("SEC"). Mutual funds are subject to SEC regulation, and are required to provide certain investment and financial disclosures and information in the form of a prospectus.

17. The "expense ratio" is the annual fee that all mutual funds charge their shareholders. It expresses the percentage of assets deducted each fiscal year for fund expenses, including 12b-1 fees, management fees, administrative fees, operating costs, and all other asset-based costs incurred by the fund. Expense ratios are often expressed in "basis points" ("bp"), which is one hundredth of one percent (*e.g.*, 105 basis points = 1.05%).

18. The Plan offers two sets of investment options: one for "participants who prefer to have someone else manage their investments," and one "for participants who prefer to build their own investment portfolios."

19. The "Lifestyle Portfolio" options are intended for "participants who prefer to have

someone else manage their investments," and "simplifi[e]s the investment selection process for participants while still providing broad diversification across asset classes." "Each Lifestyle Portfolio contains a mix of underlying funds and has been balanced [by the investment advisor] between asset classes to match different levels of risk tolerance and expectations of return."  As a result, these investment options are very actively managed and tend to have higher expense ratios.

20. These investment options include: (1) the very aggressive and risk-oriented JH LS Agg Active Strategy Portfolio; (2) the slightly less aggressive and risk-oriented JH LS Grow Active Strategy Portfolio; (3) the still less aggressive and risk-oriented JH LS Balance Active Strategy, all of which are for younger employees seeking long-term capital growth without current income as a consideration; (4) the more conservative JH LS Mod Active Strategy Portfolio, which has a medium- to long-term investment horizon and has a greater emphasis on income and is for older employees; and (5) the still more conservative JH LS Con Active Strategy, which has an even greater emphasis on income and capital preservation and a shorter investment horizon for employees close to retirement.  In other words, the "Lifestyle Portfolio" investment options are tiered depending on the employee's retirement horizon.

21. The remaining investment options are selected based on specific attributes of the underlying assets, such as "money market," "stable income," "mid core," "mid growth," "international," or "emerging markets."  These investment options are for "for participants who prefer to build their own investment portfolios" and permit them to diversify or concentrate their investments based upon their own strategies.

B. **Defendants' Failure To Ensure That Appropriate Investments Were Included In The Plan And Available To The Plan's Participants**

22.     Defendants had and have a fiduciary duty to ensure that the fees and expenses incurred by the Plan were (and are) fair and reasonable, including ensuring that the expenses associated with the mutual funds offered for investment in the Plan were (and are) fair, reasonable and cost competitive.  Defendants also had and have the obligation to ensure that the Plan offered appropriate and diverse investment options to its participants.

23.     The expenses associated with the investments in the Plan have been and are grossly excessive, because the investment options made available to the Plan's participants, at all pertinent times, have been focused upon expensive and unsuitable actively-managed mutual funds without an adequate or appropriate number of passively managed and less expensive mutual fund investment options.

24.     The current investment options and fees associated with these mutual funds are generally excessive and imprudent, amounting to four times or more the cost of passively-managed mutual funds, with absolutely no justification for this concentration in the Plan on actively managed and extremely expensive mutual funds, which rarely add value or can be justified as investment options, especially in the absence of a broad array of passively managed index funds being also made available.

25.     For example, as reflected in the Plan's June 16, 2015 Annual Contract Review: JH LS Grow Active Strategy (107 bps), JH LS Bal Active Strategy (103 bps), JH LS Mod Active Strategy (97 bps), JH LS Agg Active Strategy (111 bps), JH LS Con Active Strategy (94 bps), Blue Chip Growth Fund (95 bps), Invesco Small Cap Growth (107 bps), and Capital Appreciation Fund (88 bps), all have expense ratios of 88-111 bps, which are four or more times greater than retail passively-managed funds -- which were not made available to the Plan and its

participants during the pertinent period. Indeed, the average expense ratio weighted by the Plan's assets was an astronomical **104 basis points**.

26. There are virtually no Vanguard index funds offered in the Plan, and the S&P 500 index mutual fund charges a grossly excessive (for an index fund) expense ratio of 60 basis points. For comparative purposes, retail shares of the Vanguard S&P 500 index fund have an expense ratio of 16 basis points, which is almost a quarter of the expense ratio of the fund offered by the Plan, while Admiral Shares (which requires a minimum $10,000 investment – an amount the Plan would easily cover given the $379,792 placed in the current S&P 500 index fund) has an expense ratio of 5 basis points, which is less than a twelfth of the expense ratio of the fund offered by the Plan. Moreover, the other supposed index funds offered in the Plan (*i.e.*, passively- managed funds) charge grossly excessive fees for such passive funds with expense ratios that are four to six times higher than they should be if any degree of prudence had been exercised by Defendants.

27. Meanwhile, as of April 30, 2015, three out of the five Plan top assets -- JH LS Agg Active Strategy ($3.38 million, or 13.43% of the Plan assets), JH LS Grow Active Strategy ($5.68 million, or 22.57% of the Plan assets), and JH LS Bal Active Strategy ($4.19 million, or 16.63% of the Plan assets), which are "actively-managed" investment options for participants who entrust their diversification and investments to "experts" rather than selecting their own investments, *i.e.* "Lifestyle Portfolios" -- totaling $13.25 million, or 52.63%, of the approximately $25 million in Plan assets, *materially underperformed the S&P 500 total return under every benchmark as shown below*:

| Investment Option And Benchmark (Expense Ratio) | 1 year Return (after deducting Expense Ratio) | 3-year Return (after deducting Expense Ratio) | 5-year Return (after deducting Expense Ratio) | 10-year Return (after deducting Expense Ratio) |
|---|---|---|---|---|
| JH LS Agg Active Strategy (111 bps) | 9.02% (7.91%) | 12.93% (11.82%) | 10.43% (9.32%) | 7.11% (6%) |
| JH LS Grow Active Strategy (107 bps) | 8.01% (6.94%) | 11.64% (10.57%) | 9.77% (8.7%) | 7.04% (5.97%) |
| JH LS Bal Active Strategy (103 bps) | 6.29% (5.26%) | 9.54% (8.51%) | 8.49% (7.46%) | 6.63% (5.6%) |
| **S&P 500 TR** | **12.97%** | **16.72%** | **14.32%** | **8.32%** |

28.     As is obvious from the chart above, the returns for Plan participants who were unfortunate enough to entrust their retirement money to those "pre-selected" investment options are dismal, and shockingly so, when accounting for the high expense ratios of those "Lifestyle Portfolios."

29.     Examination of the investment options available to the Plan participants and the expenses associated with those investments over the past six years reveals that the Plan has paid grossly excessive fees during the pertinent period for extremely underwhelming performance, and that Defendants have engaged in significant breaches of fiduciary duty by (a) failing to ensure that the Plan paid reasonable and appropriate fees, and (b) retaining these improper and imprudent investment options.

## V.   ERISA'S FIDUCIARY STANDARDS

30.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan.  29 U.S.C. §1104(a), states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A)   for the exclusive purpose of
>
> > (i)   providing benefits to participants and their beneficiaries; and
> > (ii)  defraying reasonable expenses of administering the plan;
>
> [and]
>
> (B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

31.     Under 29 U.S.C. 1103(c)(l), with certain exceptions not relevant here:

> the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

32.     Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in a plan.

33.     ERISA's fiduciary duties are "the highest known to the law" and must be done "with an eye single" to the interests of participants.

34.     ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries.  29 U.S.C. §1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty.  ERISA states, in

relevant part, as follows:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2) if, by his failure to comply with section 404(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

35. 29 U.S.C. §1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109. Section 1109(a) provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## COUNT I
### (For Breach Of Fiduciary Duty)

36. Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

37. Defendants' conduct, as set forth above, violates their fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A),(B) and (C) in that Defendants failed

and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan with (b) the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims.  In addition, as set forth above, Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

38.	Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502, Plaintiff, on behalf of himself and the Plan, requests equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs and other recoverable expenses of litigation, to enjoin Defendants from further breaches of their fiduciary duties.

## COUNT II
### (For Co-Fiduciary Breach And Liability For Knowing Breach Of Trust)

39.	Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

40.	In the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a breach of trust.

WHEREFORE, Plaintiff, on behalf of himself and the Plan, demands judgment against Defendants for the following relief:

(a)	Declaratory and injunctive relief pursuant to ERISA § 502, 29 U.S.C. § 1132, as detailed above;

(b) Equitable, legal or remedial relief to return all losses to the Plan and/or for restitution and/or damages as set forth above, plus all other equitable or remedial relief as the Court may deem appropriate pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132;

(c) Pre-judgment and post-judgment interest at the maximum permissible rates, whether at law or in equity;

(d) Attorneys' fees, costs and other recoverable expenses of litigation; and

(e) Such further and additional relief to which Plaintiff and the Plan may be justly entitled and the Court deems appropriate and just under all of the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all claims so triable.

## NOTICE PURSUANT TO ERISA § 502(h)

To ensure compliance with the requirements of ERISA § 502(h), 29 U.S.C. § 1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return receipt requested.

Dated: July 14, 2016

Respectfully submitted,

/s/Jeffrey S. Goldenberg
Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
Goldenberg Schneider LPA
One West Fourth Street, 18th Floor
Cincinnati, OH 45202
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
Email: jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

James E. Miller (pro hac to be filed)
Laurie Rubinow (pro hac to be filed)
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email: jmiller@sfmslaw.com
       lrubinow@sfmslaw.com

Ronald Kravitz (pro hac to be filed)
Kolin C. Tang (pro hac to be filed)
Shepherd Finkelman Miller
 & Shah, LLP
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com
       ktang@sfmslaw.com

Nathan Zipperian (pro hac to be filed)
Shepherd Finkelman Miller
 & Shah, LLP
1625 N. Commerce Pkwy, Suite 320
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile:  (866) 300-7367
Email: nzipperian@sfmslaw.com

Sahag Majarian (pro hac to be filed)
Law Offices of Sahag Majarian
18250 Ventura Blvd.
Tarzana, CA 91356
Telephone: (818) 609-0807
Facsimile:  (818) 609-0892
Email: sahagii@aol.com

***Attorneys for Plaintiff and the Plan***